20 F.Supp.2d 1012 (1998)
Sarah HUBBARD, a Minor, by and through her Parents and Next Friends, John and Linda HUBBARD, and John and Linda Hubbard in their Individual Capacities, Plaintiffs,
v.
BUFFALO INDEPENDENT SCHOOL DISTRICT, et al., Defendants.
Civil No. W-98-CA-156.
United States District Court, W.D. Texas, Waco Division.
September 1, 1998.
*1013 *1014 Gina G. Parker, Waco, David C. Gibbs, Barbara J. Weller, Gibbs & Craza, P.A., Seminole, FL, for Plaintiffs.
Joe B. Hairston, Mark C. Goulet, Walsh, Anderson, Brown, Schulze & Aldridge, Austin, TX, for Defendants.

MEMORANDUM OPINION AND ORDER
WALTER S. SMITH, Jr., District Judge.
Before the Court are the Plaintiffs' and Defendants' Motions for Summary Judgment. The undisputed facts are these:
Sarah Hubbard, a sixteen year old, attended Buffalo Independent School District ("BISD") from Kindergarten through the seventh grade, and then transferred to the Upper Room Christian Academy ("Upper Room"). Upper Room is a non-accredited private religious institution. It differs from BISD in that 1) it is not accredited by the State of Texas; 2) it does not require its teachers to be certified or have college degrees; 3) it uses a system of student "self-directed" learning for granting both credit and grades in most courses; and 4) it sometimes awards students credit for courses without requiring any testing.
After completing one-half of the eleventh grade year at Upper Room, Sarah transferred to BISD. The BISD policy applied to "Students Entering from Non-accredited Private or Home Schools" was as follows:
Students who have taken courses through any source other than a public or private school which is fully accredited by the State of Texas or the Department of Education of the state in which the school is located, must be tested for proficiency in the course before graduation credit will be awarded for the course. (This testing requirement applies to students who have been "home schooled" and to students who have attended a private school that is not fully state accredited.) An exam must be taken for each semester credit desired. Students must score a minimum of 70 percent on the exam to receive credit toward high school graduation. Exams will be obtained through Texas Tech University. The full fee for each exam will be paid by the student and/or the student's parent/guardian. Credits earned through testing for proficiency will not be included in calculations for grade point average or class ranking.
Under this policy, Sarah was required, for each of the course-credits she wished to transfer, to take and pay for a test that would demonstrate her proficiency in the subject matter. Her other options were to take correspondence courses in the various courses or spend an extra year in high school and graduate a year later. Sarah declined all of these options and this litigation followed.
The issue is this: When a student transfers into a Texas public school from a non-accredited private school, can the student be required to pass a test, thereby proving proficiency as to each course for which the student desires credit?
Plaintiffs call the Court's attention to two state statutes adopted by the last session of the Texas legislature, asserting that these statutes create a state "fundamental right and duty of a parent to direct the upbringing of the parents' child." Plaintiffs' application of these statutes to this case is misplaced.
Section 81.002(b) of the Labor Code of the State of Texas was amended to read:
Section 3 (a) This Act takes effect September 1, 1997.
(b) No state agency may adopt rules or policies or take any action which violates the fundamental right and duty *1015 of a parent to direct the upbringing of the parent's child.
Subsection (b), Section 40.002, Human Resources Code was amended to read as follows:
(b) The department [Department of Protective and Regulatory Services] is the state agency with primary responsibility for:
(1)* * *
(2) providing family support and family preservation services which respect the fundamental right of parents to control the education and upbringing of their children; ...
Simply put, BISD is neither an agency of the State of Texas nor the Department of Protective and Regulatory Services, and these statutes do not control and are not even related to this litigation.
That parents have the primary right and obligation to control the education and upbringing of their children cannot be argued; but that right must have limits  otherwise a truant's parent could plausibly proclaim that he or she was exercising his or her rights while "home-schooling" a child to be a safecracker or a prostitute. Actually the example fails, because absent limits there could be no compulsory public education laws at all.
Policy decisions made by local school boards must be examined by courts with great deference and care. "We have previously cautioned that courts lack the `specialized knowledge and experience' necessary to resolve `persistent and difficult questions of educational policy.'" Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 3052, 73 L.Ed.2d 690 (1982). "Judicial interposition of the operation of the public school system of the Nation raises problems requiring care and restraint ... By and large, public education in our Nation is committed to the control of the state and local authorities." Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

The "Free Exercise of Religion" Cause of Action
Plaintiffs contend that BISD's refusal to transfer Sarah's credits without testing violated her rights under the Free Exercise Clause of the United States Constitution. The Court finds that Plaintiffs' claim fails for several reasons. As a result, BISD is entitled to summary judgment on Plaintiffs' free exercise claim.
Plaintiffs have failed to demonstrate how BISD's policy has burdened their right to the free exercise of religion. By Plaintiffs' own admission they have no religious objections to the school district's testing policy. See Sarah Hubbard Dep. at pp. 31, 33, 36-37, 53; Linda Hubbard Dep. at pp. 32-33; John Hubbard Dep. at pp. 22, 77. Defendants correctly point out that Plaintiffs' objections to BISD's policy are based on purely non-religious grounds. Defendant's Brief at 3. The Court agrees with Plaintiffs that taking the tests would necessitate some study and sacrifice on Sarah's part. However, making time to study for the BISD's testing is not the same as a genuine free exercise claim.
Even if the Court could construe Plaintiffs' objections to the testing policy as religious objections, the policy would still be a valid, religion-neutral policy of general applicability. Laws that are religion-neutral and are of general applicability are valid even when a compelling governmental interest cannot be found. City of Boerne v. Flores, 521 U.S. 507, 117 S.Ct. 2157, 2161, 138 L.Ed.2d 624 (1997) citing Employment Division, Dep't of Human Resources v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). It is not disputed that BISD's policy applies "across the board." That is, the policy applies to all students without regard to the nature of their prior education. The Court finds that a plain reading of the policy demonstrates that it is religion-neutral and applies to all students who wish to transfer outside credits for the purpose of graduation from BISD.
Finally, Plaintiffs have failed to show that any other rights are implicated in this case. As a matter of law and constitutional history, "...[t]he only instances where a neutral, generally applicable law had failed to pass constitutional muster, the Smith Court noted, were cases in which other constitutional *1016 protections were at stake." City of Boerne, 521 U.S. at ___, 117 S.Ct. at 2161. See also Wisconsin v. Yoder, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). The Court finds that no other constitutional protections are implicated in this case. "No special constitutional protections have been recognized for those who feel burdened by testing ... In the absence of a special constitutionally recognized interest to abstain from test-taking, the court may not entertain a free exercise challenge to the statute in question." Vandiver v. Hardin County Board of Ed., 925 F.2d 927 (6th Cir.1991). Plaintiffs' claim that Sarah must be exempted from BISD's policy as a matter of right. After considering Plaintiffs' arguments carefully, the Court finds no such right.
In sum, Plaintiffs' free exercise claim fails because Plaintiffs' objections to the policy are not religious in nature. Further, the policy is a valid, religion-neutral policy of general applicability, and the policy implicates no other constitutional protections. Therefore, the Court finds that BISD is entitled to summary judgment on Plaintiffs' free exercise claim.

Equal Protection Cause of Action Under the U.S. and Texas Constitutions
Plaintiffs claim that BISD's testing policy violates their equal protection rights under both the United States Constitution and the Texas Constitution. The equal protection analysis under the Texas Constitution is identical to that found in the United States Constitution. Spring Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 559 (Tex. 1985). In the present case, the school district's policy "neither infringes upon fundamental rights nor burdens an inherently suspect class; equal protection analysis requires that the classification be rationally related to the legitimate state interest." Id. After reviewing Plaintiffs' arguments, the Court finds that BISD's policy is rationally related to a legitimate state interest. Therefore, BISD is entitled to summary judgment on Plaintiffs' equal protection claim.
BISD's policy concerning "Students Entering from Non-accredited Private or Home Schools" does not treat one group of individuals differently from any other group. Any student coming to BISD from a non-accredited school is subject to the testing policy. Under no circumstances, apparent to the Court, is enforcement of the policy contingent on the nature of the transferring student's previous education. Plaintiffs seek to convince the Court that other BISD policies do treat other groups of students differently. Plaintiffs direct the Court's attention to BISD's policies concerning "Foreign Exchange Students" and "Correspondence Courses." These two policies are easily distinguished from the testing policy.
First, BISD's treatment of foreign exchange students is consistent with its treatment of transferring students. According to BISD's policy, foreign exchange students are not seeking to transfer outside credits into BISD for the purpose of graduation. As a result, they are not subject to the BISD testing policy. However, if a foreign exchange student would seek transfer of outside credits into BISD, such a student would be subject to BISD's testing policy. Jackson Dep. at pp. 115-118. This is the precise treatment that students in Sarah's position receive.
Second, BISD's policy concerning "Correspondence Courses" provides that any such courses be obtained through Texas Tech University, thus assuring the validity of the course work. Likewise, students in Sarah's position must pass tests obtained through Texas Tech University when they seek to transfer credits from a non-accredited school. Clearly, BISD requires both groups of students to obtain their tests and course work through the same state university to assure the quality and consistency of the materials provided. Jackson Affidavit, Exhibit A; Jackson Dep. at pp. 118-22. Furthermore, a correspondence course provided through a state university would result in credits obtained through an accredited institution. This is not the case with credits obtained through a non-accredited home school, for example. As a result, BISD is entitled to treat these two kinds of credits differently.
Finally, Plaintiffs cannot show that BISD's policy infringes upon a fundamental right or burdens a suspect class. A public education *1017 is not a fundamental right and every variation in which education is provided need not be justified by a compelling necessity. San Antonio ISD v. Rodriguez, 411 U.S. 1, 35, 93 S.Ct. 1278, 1298, 36 L.Ed.2d 16 (1973). People who choose to educate their children outside the public school system are "not members of a suspect class for equal protection purposes." Vandiver, 925 F.2d at 931. After reviewing BISD's policy, the Court finds that it is rationally related to BISD's legitimate interest in setting uniform public school advancement and graduation requirements.

Due Process Claims
Plaintiffs, at least in oral argument, have abandoned their procedural due process claim. They admit they had notice of the policy of testing to acquire credits and the opportunity to appear before the BISD board. Accordingly, for all of the foregoing reasons, it is
ORDERED that the Defendant's Motion for Summary Judgment is GRANTED as to all of Plaintiffs' claims, and Plaintiffs' Motion for Summary Judgment is in all things DENIED.