**John COLLINS, Plaintiff–Appellant,**

v.

**YELLOW FREIGHT SYSTEM, INC., Defendant–Appellee.**

No. 02–3937.

United States Court of Appeals, Sixth Circuit.

March 30, 2004.

John F. Burke, III, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, for Plaintiff–Appellant.

James D. Kurek, Roetzel & Andress, Akron, OH, for Defendant–Appellee.

Before SUHRHEINRICH, CLAY and SUTTON, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff John Collins appeals the July 22, 2002, order of the United States District Court for the Northern District of Ohio, granting Defendant Yellow Freight System, Inc.'s motion for summary judgment on his claims for disability discrimination under Ohio. Rev.Code Ann. § 4112.02(A) and *Greeley v. Miami Valley Maintenance Contractors, Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981, 981–82 syllabus para. 2 (Ohio 1990). Because there is no genuine issue of material fact concerning whether Yellow Freight regarded Collins as disabled, we AFFIRM the judgment below.

## I

### Procedural History

On September 22, 1997, Plaintiff John Collins filed a complaint against Defendant Yellow Freight System, Inc. ("Yellow") in the Ohio Court of Common Pleas. In his complaint, Collins alleged that Yellow refused to return him to work because of his handicap or perceived handicap.[1] in violation of Ohio Rev.Code § 4112.02 and Ohio public policy. Yellow removed the case to the United States District Court for the Northern District of Ohio.

On October 15, 2001, after the completion of discovery, Yellow filed a motion for summary judgment. The district court granted summary judgment on July 22, 2002. The court found that there was no genuine issue of material fact that Collins had sought or been considered for any

---

1. Ohio law recently changed the terminology from handicap to disability.

other position other than the dockworker position which he had formerly held. The court further found that there was no genuine issue of material fact that Yellow had regarded Collins as disabled in refusing to re-employ him as a dockworker, noting that there was no evidence that any employee with decisionmaking authority had regarded him as substantially limited in his ability to perform a major life activity, namely, working. The court also ruled that there was no genuine issue of material fact that Collins was qualified to be a dockworker. Specifically, the court found that it was undisputed that Collins could not meet the lifting requirements for the job. Since he was not objectively qualified to perform the job (and he had not sought a reasonable accommodation), summary judgment was proper on this independent ground. The court dismissed Collins' public policy claim as derivative of his statutory disability discrimination claim.

### Substantive Facts

Collins was hired as a dockworker at Yellow in 1983 while he was on a lay-off from his employment at General Electric ("GE"). After completing his time as a "casual" employee, Collins was hired as a full-time dockworker, working primarily on the night shift. In 1985, Collins was recalled to his mechanic position at GE. From 1985 to 1990, Collins worked full-time at both Yellow and GE, for a total of 80 hours per week. Collins worked various positions at GE, including electro-mechanic, heavy helper and electrical tester; all of these positions require strenuous lifting or other physical activity, including Collins' current position as a winder.

In December of 1989, Collins injured himself at Yellow while attempting to lift a 200–pound wooden box. Collins felt a pull in his lower back and immediately reported his injury to his supervisor. He missed several days of work and then continued working until March of 1990, when his physician, Dr. Bhupindar Sawhny, indicated that Collins could not work. Yellow accepted Collins' injury as a workers' compensation claim and began paying him temporary total disability benefits. Yellow paid Collins these benefits from March of 1990 through December of 1990, all the while Collins was working at GE. In April of 1991, the Ohio Bureau of Workers' Compensation awarded Collins wage loss benefits on the ground that he could no longer work two full-time positions; the wage loss benefits were retroactive to March of 1990, but offset by the temporary total benefits he had received to date. The Bureau's determination was based on the October 10, 1990, medical report of Dr. Sawhny, which indicated that Collins had "a congenitally narrow lumbar canal," specifically, "spinal stenosis at the L–4/5 level." The report also indicated that Collins was not currently prescribed any medications or therapy and that he had "reached maximum medical improvement," but that he "should not return to work which involved lifting more than 100 pounds repeatedly." (J.A. 89–99.)

In April of 1992, the Bureau terminated Collins' wage loss benefits on the ground that Collins had not sought employment within his physical capabilities following his release for return to work on October 10, 1990. Thereafter, Collins did not seek re-employment with Yellow.

In June of 1992, Dr. Sawhny indicated in response to a letter from Collins' attorneys that Collins' back condition would not preclude performance of more than one job on a regular basis. Collins subsequently was evaluated by Yellow's physician, Dr. Bruce Feldman, in 1994. Dr. Feldman concluded as follows:

> The claimant's [Collins'] back condition as it relates to the allowed claim's condi-

tion does not render him unable to seek employment for a second full-time job in order to mitigate the loss of income suffered as a result of being unable to return to work as a dock worker at Yellow Freight.

Moreover, the claimant's back condition as it relates to the allowed claim's condition would not have prevented the claimant from returning to a second full-time job following his employment termination with Yellow Freight in March 1990.

\* \* \* \* \* \*

As far as restrictions for the work activities of the claimant, again relating to the allowed claim's condition, since the claim-related condition is resolved, there would be no restrictions.

Based solely on the claim's allowed condition and AMA guidelines the claimant has a 0% permanent partial impairment of the body as a whole.

Despite Dr. Feldman's opinion, Collins never sought employment or attempted to return to work at Yellow at that time. Instead, Collins filed another workers' compensation claim for "aggravation of pre-existing spinal stenosis," relying on Dr. Sawhny's 1990 report. That claim was denied on August 11, 1995, and Collins' administrative appeal of that denial was rejected a few weeks later. Collins then filed an appeal in Ohio state court, but following a jury trial, Yellow again proved victorious.

After Collins exhausted his workers' compensation remedies, Collins' attorney sent a letter to Yellow's attorney on July 11, 1996, requesting that Collins be permitted to return to work based on Dr. Feldman's 1994 report. Yellow's attorney responded that Collins' return to work was predicated upon his meeting the terms and conditions of the collective bargaining agreement, the National Master Freight Agreement. The letter from Yellow's attorney failed to indicate the terms and conditions with which Collins needed to comply, but did direct Collins to his union representative for any questions. Collins' attorney sought clarification from Yellow's attorney on September 25, 1996, but there is no evidence in the record regarding how or even whether Yellow responded. Evidently, it was Yellow's position that the National Master Freight Agreement required Collins to be cleared by Yellow's doctor before he could return to work.

On July 2, 1997, Collins showed up at the Yellow Freight Terminal with a "Disability—Release for Work/School" slip signed by his physician, Dr. Paul Steurer. The form did not list any work restrictions, but also did not identify a specific position that Collins was released to perform; it just indicated that Collins had Dr. Steurer's "permission to return to work/school." According to Collins' affidavit, he and Yellow perceived Dr. Steurer's release as a release to return to full duty work "as a dock worker." Yellow did not permit Collins to work that day and sent him home. The next day, Yellow's Injury Counselor, Vic Pallotta, sent a letter to Collins noting that he had not worked for Yellow for several years and stating that before Collins could return to work he must first submit all of his medical records to Dr. Dean Erickson for his review and then complete a medical examination. The record indicates that Dr. Erickson already had these medical records in his possession because he had conducted a medical evaluation of Collins on May 20, 1997 related to a back injury he had sustained with GE. Consequently, Collins did not forward anything to Dr. Erickson.

Collins then filed a grievance contending that Yellow incorrectly had refused to allow him to return to work when presented with the full work release from Dr. Steur-

er. Employer and union representatives deadlocked over the grievance, so, pursuant to the collective bargaining agreement, a hearing was held before a Joint Area Committee on September 8, 1997. A September 17, 1997, letter sent to Collins from a union representative stated that the Committee had concluded, "Upon successfully completing a physical examination by a Yellow Freight chosen Doctor, Mr. Collins shall be returned to work." (J.A. 121.) After some confusion about whether Collins received notice of the Committee's decision, Collins eventually was examined by Dr. Erickson and participated in a·Functional Capacity Examination with Nova-Care on November 24, 1997. Based on his examination and the results of the Functional Capacity Examination, Dr. Erickson concluded as follows:

> The functional capacity evaluation indicated that Mr. Collins was capable of a Department of Labor medium category of work. This is equivalent to occasional lifting and carrying to 50 pounds, frequent lifting and carrying to 20 pounds and 10 pounds constantly.
>
> \*   \*   \*   \*   \*   \*
>
> 1) Mr. Collins is not capable of returning to work as a Yellow Freight Systems dock worker on an unrestricted basis....
>
> 2) Consistent with his history and examination and objective functional testing, Mr. Collins is capable of a medium level of work with the aforementioned 50 pound lifting, frequent 20 pound lifting and carrying.[2]

(J.A. 126.) Collins' physician, Dr. Steurer, reviewed Dr. Erickson's findings and concurred on January 30, 1998, stating:

> I have approved the comprehensive evaluation and physical capacity assessment that were done on John Collins. I have no reason to disagree with this.
>
> The report certainly is thorough and complete and I would concur that he is able to go back to work within those restrictions as outlined.

(J.A. 131.) Based on the undisputed medical findings that Collins could not return to work as a dockworker without restrictions, Collins' union withdrew his grievance because the collective bargaining agreement afforded Collins the right to return to work only if he did not have any work restrictions.

## II

### A.  Standard of Review

The Court reviews a district court's grant of summary judgment *de novo,* and affirms such a judgment only if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Cotter v. Ajilon Serv., Inc.,* 287 F.3d 593, 597 (6th Cir.2002). "The Court should believe the evidence presented by the non-movant, and draw all justifiable inferences in his favor." *Id.* (citing *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 933–34 (6th Cir. 2000)).

### B.  Statutory Disability Discrimination Claim

Ohio law makes it unlawful for an employer to discriminate against a person with respect to hiring or other terms, conditions or privileges of employment because of disability. Ohio. Rev.Code Ann. § 4112.02(A). A "disability" means (1) "a

---

**2.** According to Yellow's job description for the dockworker position, dated January 28, 1992, an essential function of the position is being able to lift and carry boxes that weigh between 60 and 75 pounds and some boxes that weigh more than 80 pounds. The job description states that the dockworker must be able to manually lift and carry boxes that weigh as much as 75 pounds for 8 to 20 minutes, two times or more per hour.

physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working"; (2) "a record of a physical or mental impairment"; or (3) "being regarded as having a physical or mental impairment." *Id.* § 4112.01(A)(13). Ohio courts look to judicial interpretations of the federal Americans with Disabilities Act ("ADA") when interpreting Ohio's statutory prohibitions against disability discrimination. *See City of Columbus Civil Serv. Comm'n v. McGlone*, 82 Ohio St.3d 569, 697 N.E.2d 204, 206 (Ohio 1998) (noting similarity of Ohio law to the ADA).

Collins does not contest Yellow's interpretation of the collective bargaining agreement that, assuming Collins could not perform the dockworker job without restrictions, he was not entitled to return to work as a dockworker. He does not allege that he requested and/or was denied a reasonable accommodation. Instead, Collins argues (1) that he could perform the dockworker job without restrictions and (2) that the true reason Yellow refused to permit him to return to work was because Yellow perceived that he was disabled. There is no factual basis to support either argument.

1. There is no genuine issue of material fact concerning whether Collins could perform the duties of a dockworker without restrictions.

■ According to Yellow's job description for the dockworker position, dated January 28, 1992, an essential function of the position includes being able to lift and carry boxes that weigh between 60 and 75 pounds and some boxes that weigh more than 80 pounds. The job description states that the dockworker must be able to manually lift and carry boxes that weigh as much as 75 pounds for 8 to 20 minutes, two times or more per hour. The undisputed medical evidence shows that Collins was capable of lifting and carrying up to 20 pounds frequently and up to ten pounds constantly. far less than the 60 to 75 pound range specified by the job description. Thus, Collins could not perform an essential function of the dockworker position.

Collins argues that the lifting and carrying requirement from the job description is not an essential function of the dockworker position. As support, he points to the facts that (1) he was not aware of the written job description until this litigation; (2) two Yellow employees testified that they either were not aware of a written job description or could not testify as to the essential functions of the dockworker position; and (3) neither the collective bargaining agreement nor Yellow's interrogatory responses mention any weight restrictions. These facts do not create a genuine issue of material fact concerning whether Yellow fabricated the essential functions of the dockworker position.

Whether or not Collins and/or other employees were aware of a written document setting out the job's essential functions in no way contradicts the existence of the essential functions. Other than his conclusory denial of the weight-lifting restriction, Collins has cited to no affirmative evidence (such as specific testimony from dockworkers or language in the collective bargaining agreement concerning weight-lifting requirements) that actually *contradicts* the specific weight-lifting requirements set forth in the written job description. *See* 29 C.F.R. § 1630.2(n)(1) (noting that courts should consider the following factors, among others, to determine whether a job function is essential: the employer's judgment about what functions are essential; written job descriptions; the amount of time spent on the job performing the

function; the consequences of not requiring the performance of the function; the terms of a collective bargaining agreement; and the experience of people who have performed the job or similar jobs).

Moreover, Collins' interrogatories never asked Yellow to describe the "essential functions" of the dockworker position, but rather, the "duties and responsibilities" of the position. (J.A. 272.) Yellow's response states that a dockworker is required to move freight and to manually lift and carry boxes and odd-shaped freight. The fact that this brief description of general duties does not specify the amount of weight to be lifted and carried does not raise a genuine issue of material fact concerning whether Yellow concocted the specific, minimum weight-lifting requirements.

Finally, although Collins argues that Dr. Erickson was not aware of the dockworker job's essential functions when he concluded that Collins could not perform the dockworker position, he has not presented any testimony from Dr. Erickson or anyone else that proves this argument. To the contrary, it is undisputed that Dr. Erickson was provided with the written description of the job prior to his evaluation. In addition, Dr. Erickson sent staff to Yellow's facility to personally observe the job functions first-hand.

2. There is no genuine issue of material fact that Yellow regarded Collins as disabled.

▇ Collins does not argue that he has a disability as defined by the Ohio Revised Code. Rather, he argues that Yellow refused to permit him to return to work because Yellow purportedly regarded him as disabled. When an individual proceeds under a "regarded as" theory, the Court "must look to the state of mind of the employer against whom he makes a claim." *Ross v. Campbell Soup Co.*, 237 F.3d 701,

706 (6th Cir.2001). According to the Supreme Court:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Air Lines,* 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). When, as here, the plaintiff claims that working is the relevant major life activity, he must create a genuine issue of material fact that the employer mistakenly thought that his impairment "prevent[ed] him from performing a broad class of jobs." *Ross,* 237 F.3d at 709. *See also McGlone,* 697 N.E.2d at 207 (holding that vision impairment was not tantamount to a "handicap" under predecessor to Oh. Rev.Code. § 4112.01(A)(13) because the plaintiff's inability to work as a firefighter did not disqualify him from a broad class of jobs or a wide range of jobs; further holding that the plaintiff was not perceived to be disabled because the defendant did not perceive the plaintiff's impairment as "foreclosing him from a class of jobs").

There is no evidence in the record that Collins is substantially limited in his ability to work in a broad range of manual labor jobs for which he is qualified. *Cf. Burns v. Coca-Cola Enters. Inc.,* 222 F.3d 247, 253–54 (6th Cir.2000) (holding that an individual may be disabled by a lifting restric-

tion of 23 pounds, by being substantially limited in the major life activity of working, if that restriction prevented him from performing "medium to heavy lifting and other forms of manual labor," and those jobs constituted the majority of the jobs for which that plaintiff is suited based on his age, education and experience). To the contrary, the evidence suggests that, notwithstanding his back impairment, Collins can perform a broad range of jobs that require manual labor, including his jobs at GE as electro-mechanic, heavy helper and electrical tester; all of these positions require strenuous lifting or other physical activity, including Collins' current position as a winder.

To be sure, since Collins has brought a "regarded as" claim, the issue is not what Collins actually can do, but what Yellow *perceives* he can do. But there is no evidence that Yellow mistakenly perceived Collins as unable to work in broad range of jobs. At the time Yellow refused to let Collins return to work, Yellow knew that Collins was working at GE in a job that required strenuous manual labor. Thus, there is no basis in the record to infer that Yellow inaccurately perceived Collins as unable to work in any job that required manual labor. *See Murphy v. United Parcel Serv., Inc.*, 527 U.S. 516, 525, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999) (affirming summary judgment for employer on "regarded as" claim; "in light of petitioner's skills and the array of jobs available to petitioner utilizing those skills, petitioner has failed to show that he is regarded as unable to perform a class of jobs").

The mere fact that Yellow may have mistakenly regarded Collins as unable to work two jobs is not tantamount to a perception that Collins was substantially limited in the major life activity of working. *Cf. Cotter*, 287 F.3d at 599 ("We have held that an inability to work overtime is not a

substantial limitation on the ability to work.") (citations omitted). At most, Yellow perceived Collins as incapable of manually lifting and carrying boxes that weigh as much as 75 pounds for 8 to 20 minutes, two times or more per hour. *See Henderson v. Ardco, Inc.*, 247 F.3d 645, 651 (6th Cir.2001) (distinguishing situation in which employee with back injury is perceived as unable to perform any "job in the plant" from a situation in which the employee is perceived as incapable of performing the narrow task of lifting between 30 and 70 pounds; noting that the latter situation does not involve a perceived disability). Such facts are insufficient to support a "regarded as" claim.

The only other "evidence" of alleged disability bias to which Collins points concerns Yellow's purported refusal to allow Collins to participate in its modified work program. Article 14, § 2 of the applicable collective bargaining agreement provided that Yellow could establish a modified work program for employees who were unable to perform their normal work assignments due to a disabling on-the-job injury. Yellow was obligated to offer a temporary modified assignment only to employees who were "temporarily" disabled due to a compensable worker's compensation injury. Employees who, according to professional medical opinion, may never be expected to receive an unrestricted medical release, were not eligible to participate in a modified work program. When asked at deposition about the modified work program, two Yellow employees. Vic Pallotta and Joel Campbell, speculated that Collins would not have been eligible for the program because the long-term nature of his medical condition tended to demonstrate that it was permanent and because there was no evidence that his long-term medical condition (spinal stenosis) was work-related. Consistently, Collins testified that he would not have been

eligible for the program because his injury was not work-related. As a result, he never asked to participate in the program. Thus, Yellow's modified work program is irrelevant to this case.

■ Collins nevertheless argues that Pallotta's deposition testimony about the modified work program provides direct evidence that Yellow perceived him to be disabled. "In discrimination cases, direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999). At deposition, Collins' attorney asked Pallotta a series of questions about why Collins had not been permitted to return to work. Pallotta testified that he had had no input into the decision not to permit Collins to return to work on an unrestricted basis. He further testified that whether Collins was eligible to return to work on a restricted basis under the modified work program would have been determined by Yellow employees in Kansas City, not in Cleveland where Collins sought to work. Collins' attorney then asked Pallotta about his "understanding" about why Collins was deemed ineligible for modified work. In response, Pallotta stated that it was his "understanding" that someone with a "permanent disability" is not eligible for the modified work program and that "it was [per]ceived by Yellow Freight that Mr. Collins' disability was permanent and thus he was not eligible for the transitional work program." (J.A. 92–94.)

Pallotta's testimony is not competent direct or circumstantial evidence that Yellow perceived Collins to be disabled. Taken in context, the testimony represents Pallotta's opinion that Collins had been denied modified work because his physical condition that precluded him from working

without restriction was permanent in nature. Pallotta was not opining as to whether Collins suffered from a disability, but as to the duration of Collins' physical condition for purposes of qualifying for the modified work program. Regardless, because Pallotta was not involved in the decision to deny Collins modified work, and he did not even identify a specific employee who had been involved, Pallotta's opinion as to Yellow's intent lacked foundation and therefore was inadmissible speculation. *See* Fed.R.Civ.P. 56(e) ("... opposing affidavits shall be made on personal knowledge ..."); Fed.R.Evid. 701 (providing that lay testimony is limited to those opinions or inferences which are "rationally based on the perception of the witness"). Moreover, Yellow's alleged perception that Collins had a permanent back impairment that made him ineligible for modified work is not equivalent to a perception that Collins had a permanent back impairment that substantially limited his ability to perform a major life activity. As noted above, there is no direct or circumstantial evidence that Yellow perceived Collins as unable to perform the major life activity of working. Accordingly, Pallotta's testimony is not evidence that Yellow perceived Collins to be disabled.

At most, the evidence shows that Yellow perceived that Collins had a back impairment that rendered him "incapable of satisfying the singular demands" of the dockworker position, the only position that Collins ever sought with Yellow. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 885 (6th Cir.1996) (quotation marks and citation omitted). This evidence is insufficient to withstand a summary judgment motion.

## C. Common Law Disability Discrimination Claim

■ It is not clear whether Collins was ever discharged, since the posture of this

case is more like a refusal to hire. Thus, it is unclear whether Collins can bring a claim pursuant to *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981, 981–82 syllabus para. 2 (Ohio 1990), which permits claims for wrongful discharge in violation of public policy. Because the parties have not raised the issue, the Court assumes, *arguendo,* that *Greeley* applies outside of the wrongful discharge context. In any event, since there is no genuine issue of material fact that Collins was disabled or regarded as disabled, his public policy wrongful discharge claim must fail. *See Plant,* 212 F.3d at 939–40 (affirming summary judgment on *Greeley* claim premised on public policy against disability discrimination because there was no genuine issue of material fact that the plaintiff was disabled under the ADA). In addition, Collins cannot maintain a *Greeley* claim because the terms of his employment were governed by a collective bargaining agreement. *Haynes v. Zoological Soc. of Cincinnati,* 73 Ohio St.3d 254, 652 N.E.2d 948, 951 (Ohio 1995) (holding that *Greeley* does not apply to individuals who are not at-will employees, such as persons covered by a collective bargaining agreement).

### III

To conclude, there is no genuine issue of material fact concerning whether Yellow regarded Collins as disabled when it refused to re-employ him as a dockworker. At most, the evidence shows that Yellow regarded Collins as having an impairment that rendered him unqualified for the specific job of dockworker. The district court also correctly dismissed Collins' public policy claim as duplicative of his statutory disability discrimination claim. In addition, the claim was properly dismissed because Collins was not an at-will employee. For these reasons, the Court AFFIRMS the district court's order granting sum-

mary judgment in favor of Yellow Freight Systems.