**Paul S. OWENS, Plaintiff,**

v.

**John R. PARRINELLO, Esq., Brighton Campus Monroe Community College Members of the Board of Trustees in their official capacity only, et al., Defendants.**

No. 03–CV–6483L.

United States District Court,
W.D. New York.

April 18, 2005.

Darren A. Jones, James R. Mason, III, Home School Legal Defense Assoc., Purcellville, VA, David C. Rollinson, Rollinson Law Firm, Syracuse, NY, for Plaintiff.

Michael E. Davis, Charles S. Turner, Monroe County Department of Law, Robert A. Colon, Office of New York State Attorney General, Rochester, NY, for Defendants.

## DECISION AND ORDER

LARIMER, District Judge.

Plaintiff, Paul Owens, brings this action under 42 U.S.C. § 1983, alleging that certain of his rights have been violated by defendant Monroe Community College's ("MCC") refusal to allow him to graduate with an associate's degree. On March 16, 2005, the Court issued an Order and Judgment dismissing a number of plaintiff's claims. Pending before the Court is a motion to dismiss plaintiff's remaining claims, which are brought against certain MCC officials and its board of trustees in their official capacities. For the following reasons, that motion is granted, and the complaint is dismissed.

## FACTUAL BACKGROUND

Plaintiff alleges that he was homeschooled by his parents through high school, in compliance with New York regulations governing homeschooling. He completed a four-year high school program in 2001.

Plaintiff applied to and was accepted at MCC, beginning with the Fall 2001 semester. By the time this action was commenced in September 2003, plaintiff had completed four semesters of study at MCC, and had earned enough credits to be awarded an associate's degree. In December 2002, however, plaintiff received a letter from MCC informing plaintiff that MCC "ha[d] recently been notified by the New York State Education Department that documentation of a high school diploma or equivalency is required before a student can graduate from a New York State college." Amended Complaint (Dkt.# 25) Ex. 7. The letter further stated that MCC's records indicated that MCC had never received proof from plaintiff that he had either a high school diploma or a general equivalency diploma ("GED"). The letter stated that if plaintiff had not

graduated from high school or earned a GED, he should "consider one of the options listed in the enclosure. You will need to take some action to ensure you qualify for graduation when you complete your degree requirements." *Id.* The letter then provided information about how plaintiff could obtain a GED.

Plaintiff did not attempt to obtain a GED. He does not contend that he would have been unable to obtain a GED, but states that he is unwilling to do so because a GED "carries the stigma of being a substitute for a high school diploma utilized primarily for high school dropouts .... " Amended Complaint ¶ 38.[1]

In October 2003, plaintiff applied for admission to the State University of New York at Brockport ("Brockport"), seeking to transfer there. Brockport's admissions director allegedly told plaintiff that he was ineligible for admission because plaintiff did not have a state-recognized high school diploma or GED. Amended Complaint ¶ 37.

Plaintiff then applied to and was accepted at Roberts Wesleyan College ("Roberts") as a junior in January 2004. He is currently attending Roberts.

Plaintiff commenced this action in September 2003, alleging various violations of his constitutional rights. The original complaint sought only declaratory and injunctive relief, primarily aimed at directing MCC to issue him an associate's degree. In April 2004, plaintiff filed an amended complaint which also requests an award of damages for the difference between the tuition that plaintiff is paying at Roberts (about $6100 per semester) and the tuition that he would have paid had he been accepted at Brockport (about $2600 per semester).

In September 2004, the New York State Board of Regents amended the regulations governing homeschooling to provide that, as long as their homeschool instruction meets certain requirements, homeschooled students can be graduated from a New York college. In addition, at oral argument on the pending motion, the parties agreed that, pursuant to those amended regulations, MCC has now issued plaintiff an associate's degree. Plaintiff concedes that his claims for injunctive relief are therefore moot, but he still seeks damages. *See* Plaintiff's Memorandum of Law (Dkt.# 58) at 4.

The amended complaint asserts four causes of action. The first alleges that plaintiff possesses a protected property interest in receiving an earned associate's degree, and that defendants deprived him of that property interest without due process of law. Plaintiff's second cause of action alleges that defendants discriminated against plaintiff because of his parents' exercise of their constitutional right to homeschool plaintiff. The third claim alleges that defendants violated plaintiff's constitutional right to equal protection by treating him differently from students with high school diplomas or GEDs. Plaintiff's fourth cause of action alleges a violation of New York Education Law § 3204, which provides that a child "may attend a public school or elsewhere," so long as the instruction given "elsewhere" is "substantially equivalent" to that given in public schools.

## DISCUSSION

### I. Due Process Claim

Plaintiff's due process claim rests upon his assertion that he had a protected prop-

---

1. Plaintiff does not explain how he would have been subject to this alleged stigma, since presumably once he had obtained a GED, he would have had no obligation to inform any-

one (other than MCC itself, which apparently already knew that plaintiff had been homeschooled) of that fact.

erty interest in graduating from MCC. He contends that this interest arose by virtue of an implied contract between him and MCC.

■ It is true that New York courts have identified an implied contract between an institution of higher learning and its students which requires the "academic institution [to] act in good faith in its dealings with its students." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991) (quoting *Olsson v. Board of Higher Educ.*, 49 N.Y.2d 408, 414, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (1980)). Pursuant to that implied contract, "if [the student] complies with the terms prescribed by the [school], he will obtain the degree which he sought." *Olsson*, 49 N.Y.2d at 414, 426 N.Y.S.2d 248, 402 N.E.2d 1150 (quoting *Matter of Carr v. St. John's Univ.*, 17 A.D.2d 632, 633, 231 N.Y.S.2d 410, *aff'd* 12 N.Y.2d 802, 235 N.Y.S.2d 834, 187 N.E.2d 18 (1962)). This implied contract "provide[s] the basis for a property interest that would be entitled to constitutional protection." *Branum*, 927 F.2d at 705.

■ The problem with plaintiff's claim, though, is that MCC *was* willing to award plaintiff a degree as long as he met all of the state's requirements for issuance of a degree, including (prior to the amendment of the regulations) possession of a high school diploma or GED. Although MCC did not inform plaintiff of that requirement until his third semester, courts have held that a change in graduation requirements does not amount to a breach of the implied contract. *See, e.g., Babiker v. Ross Univ. Sch. of Med.*, No. 98 CIV 1429, 2000 WL 666342, at *6 (S.D.N.Y. May 19, 2000) ("Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious"); *Keles v. N.Y.U.*, No. 91 CIV. 7457, 1994 WL 119525, at *6

(S.D.N.Y. April 6, 1994) ("the University could change the regulations for Ph.D. matriculation without breaching its contract"); *see also Mahavongsanan v. Hall*, 529 F.2d 448, 450 (5th Cir.1976) (change in graduation requirements not a breach of contract, as change constituted proper exercise of university's educational responsibilities) (citing *Foley v. Benedict*, 122 Tex. 193, 55 S.W.2d 805 (1932)); *Easley v. University of Michigan Bd. of Regents*, 627 F.Supp. 580, 585–86 (E.D.Mich.1986) (finding frivolous plaintiff's argument that he was not bound to a change in the number of hours needed to graduate), *aff'd*, 906 F.2d 1143 (6th Cir.1990), *cert. denied*, 499 U.S. 947, 111 S.Ct. 1414, 113 L.Ed.2d 467 (1991). MCC's imposition of a high school diploma or GED requirement for graduation, which was based on a change in governing New York State regulations, was neither arbitrary nor capricious, so plaintiff's due process claim fails.

## II. Discrimination Because of Plaintiff's Parents' Exercise of Their Constitutional Rights

In his second cause of action, plaintiff alleges that defendants unlawfully discriminated against him on account of his parents' exercise of their constitutional right to direct their child's education. Plaintiff alleges that by doing so, defendants deprived him of his property rights without due process of law. Amended Complaint ¶ 58.

There are a number of flaws with this claim. First, to the extent that it is premised on an alleged denial of a property interest, it fails for the same reasons as the first cause of action. Second, to the extent that plaintiff claims that he was discriminated against because he had been homeschooled, this claim is duplicative of his equal protection claim, which is addressed below, and is subject to dismissal

on that ground. *See, e.g., Collins v. Yellow Freight System, Inc.,* 93 Fed.Appx. 854, 863, 2004 WL 690138 (6th Cir.2004) (district court correctly dismissed plaintiff's public policy claim as duplicative of his statutory disability discrimination claim); *Lawrence v. Town of Irondequoit,* 246 F.Supp.2d 150, 169 (W.D.N.Y.2002) (dismissing fraud claim as duplicative of breach of contract claim).

■ Third, to the extent that plaintiff alleges that defendants violated his *parents'* constitutional right to homeschool him, plaintiff lacks standing to assert such a claim. A plaintiff may assert the constitutional claims of a third party if he can demonstrate: (1) injury to the plaintiff; (2) a close relationship between the plaintiff and the third party that would cause plaintiff to be an effective advocate for the third party's rights; and (3) "some hindrance to the third party's ability to protect his or her own interests." *Campbell v. Louisiana,* 523 U.S. 392, 397, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998). Plaintiff has not alleged any facts showing that his parents have been hindered from vindicating their own rights in this regard.

For that matter, there are no facts alleged that show that plaintiff's parents rights were violated to begin with. Plaintiff's parents *did* homeschool him, all the way through high school. The only alleged injury to anyone came *after* plaintiff's homeschooling was completed, and the injury was to plaintiff, not his parents. This claim must therefore be dismissed as well.

### III. Equal Protection Claim

In support of his equal protection claim, plaintiff alleges that defendants treated him differently from similarly situated public school graduates, by denying him an associate's degree without first obtaining a GED. Plaintiff contends that because his homeschool education was substantially equivalent to a public school education, there was no rational basis for this difference in treatment.

■ Plaintiff then goes on to apply strict scrutiny analysis to defendants' actions. That is incorrect. Strict scrutiny review only applies when legislation discriminates on the basis of a person's membership in a suspect class or when it burdens a group's exercise of a fundamental right. *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982); *see, e.g., City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 493–94, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989) (applying strict scrutiny to program that discriminated on basis of race, a suspect classification); *Skinner v. Okla. ex rel. Williamson,* 316 U.S. 535, 541–42, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (invalidating sterilization law because it impinged on the fundamental right to marriage and procreation of some criminals, but not others).

■ Instead, the proper analysis here is whether defendants' GED requirement was rationally related to a legitimate government interest. *See, e.g., Allied Stores of Ohio, Inc. v. Bowers,* 358 U.S. 522, 528–29, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Smart v. Ashcroft,* 401 F.3d 119, 122 (2d Cir.2005); *Goulart v. Meadows,* 345 F.3d 239, 260–61 (4th Cir.2003) (applying rational-relationship test to equal protection claims by parents of homeschooled children). Government actions treating different groups of people differently will survive this level of scrutiny unless the plaintiff proves that the class-based distinctions are wholly irrational. *See, e.g., Hodel v. Indiana,* 452 U.S. 314, 331–32, 101 S.Ct. 2376, 69 L.Ed.2d 40 (1981).

■ Defendants' actions here easily pass that test. Colleges certainly have a legitimate interest in maintaining academic

standards and ensuring that appropriate graduation requirements-such as possession of a high school diploma or its equivalent-have been met. MCC was not required simply to take plaintiff at his word that he had received the equivalent of a public high school education. *See, e.g., Vandiver v. Hardin County Bd. of Educ.,* 925 F.2d 927, 931 (6th Cir.1991) (requiring home-schooled students to pass an exam before transferring into county school system did not violate equal protection, since testing requirement bore a rational relationship to state's legitimate interest in setting uniform public school advancement and graduation requirements); *Hubbard By and Through Hubbard v. Buffalo Independent School Dist.,* 20 F.Supp.2d 1012, 1016–17 (W.D.Tex.1998) (school district's policy of requiring students transferring from non-accredited or home schools to pass proficiency exams at their own expense in order to receive credit toward graduation was rationally related to legitimate state interest in setting uniform public school advancement and graduation requirements, and therefore did not violate equal protection). *See also Anderson v. University of Wisconsin,* 665 F.Supp. 1372, 1392 (W.D.Wis.1987) ("if the [school's] academic standards are rationally related to the ... school's legitimate goals, then the law school has no obligation to make exceptions to those standards").

■ Second, the Supreme Court has stated that "[c]ourts have stressed the importance of avoiding second-guessing of legitimate academic judgments," and "has cautioned that 'judges .... asked to review the substance of a genuinely academic decision ... should show great respect for the faculty's professional judgment.'" *University of Penn. v. EEOC,* 493 U.S. 182, 199, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (internal quotation marks and citation omitted). To that

end, "the widest possible range of discretion must be afforded university faculties in their evaluation of a student's ... eligibility to promotion or graduation." *Hammond v. Auburn Univ.,* 669 F.Supp. 1555, 1561 (M.D.Ala.1987).

Courts, then, should avoid interfering with or second-guessing a college's academic decisions. "[T]he federal courts are reluctant to interfere in the internal operations of [a college]." *Parate v. Isibor,* 868 F.2d 821, 827 (6th Cir.1989). *See, e.g., Haberle v. University of Alabama in Birmingham,* 803 F.2d 1536, 1541 (11th Cir. 1986) (requirement by university that student successfully pass qualifying examination before continuing to pursue a doctorate degree in chemistry was not arbitrary; "courts should not interfere with this academic decision"); *Wirsing v. Board of Regents of University of Colorado,* 739 F.Supp. 551, 553 (D.Colo.1990) (noting that "the federal courts are reluctant to interfere in the internal daily operations of [a college] which do not directly and sharply implicate basic constitutional values"); *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

As stated, MCC's actions were rationally related to its legitimate interests in maintaining academic standards and the integrity of its degree-granting programs, not to mention its interest in complying with state-imposed regulations. The Court should not and will not second-guess those actions.

### IV. Plaintiff's Claim for Damages

■ Aside from these problems with plaintiff's individual claims, plaintiff's claim for damages suffers from certain fundamental defects, regardless of the legal theories on which it is premised. For one thing, according to the complaint, the reason that plaintiff was ineligible to attend Brockport's was not that he lacked a diplo-

ma from *MCC;* it was his lack of a *high school* diploma (or GED) that was the obstacle. MCC had nothing to do with that.

Plaintiff states in a declaration that Brockport's director of admissions told him that if plaintiff had possessed a diploma from MCC, Brockport would have assumed that he was a high school graduate, without requiring him to submit proof of his high school education.[2] That does not alter the fact that plaintiff did *not* have a high school diploma, however, and I see no reason why MCC should have essentially helped plaintiff misrepresent his educational background.

Another fundamental problem with plaintiff's claim for damages is that-even assuming that his rights had been violated, which they were not-it rests on the assumption that he would have been admitted to Brockport had MCC graduated him. That is little more than speculation.

## V. Plaintiff's Claims for Equitable Relief

As stated, plaintiff appears to concede that his claims for injunctive and declaratory relief are moot, and they are therefore dismissed as well. Pursuant to Article III of the Constitution, federal courts "have jurisdiction only over live cases and controversies." *ABC, Inc. v. Stewart,* 360 F.3d 90, 97 (2d Cir.2004). "Therefore, under the mootness doctrine, 'if an event occurs while a case is pending ... that makes it impossible for the court to grant "any effectual relief whatever" to a prevailing party,' [the court] must dismiss the case ...." *Id.* (quoting *Church of*

*Scientology v. United States,* 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992)). *See also Steffel v. Thompson,* 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (mootness doctrine provides that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed"). Since plaintiff has now received an associate's degree from MCC, his claims for equitable relief are dismissed as moot.

## VI. Plaintiff's State Law Claim

As stated, plaintiff's fourth cause of action alleges a violation of N.Y. Educ. L. § 3204. The Second Circuit has stated that, in general, "if [all] federal claims are dismissed before trial ..., the state claims should be dismissed as well." *Castellano v. Board of Trustees,* 937 F.2d 752, 758 (2d Cir.1991) (quoting *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); *accord Giordano v. City of New York,* 274 F.3d 740, 754 (2d Cir.2001); *see also Sadallah v. City of Utica,* 383 F.3d 34, 40 (2d Cir.2004) ("because plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court"). Plaintiff's fourth cause of action is therefore dismissed without prejudice to refiling in state court.

## VII. Defendants' Cross-Claim

Defendants have also asserted a cross-claim for indemnity against certain other defendants, generally referred to by the parties as "the State defendants." (Plaintiff's claims against the State defendants have already been dismissed.) Since I am

---

**2.** In general, the Court could not consider this affidavit, which is outside the pleadings, without converting defendants' motion (which is made under Rule 12(c) of the Federal Rules of Civil Procedure) to a motion for summary judgment under Rule 56. *See* Fed.R.Civ.P.

12(c). Since it is the non-moving party who has submitted this document, however, and since it would have no effect on the Court's decision anyway, converting the motion would be a pointless exercise.

dismissing the complaint in its entirety, defendants' cross-claim is dismissed as well.

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt. # 56) is granted, and the complaint is dismissed.

Defendants' cross-claim (Dkt. # 31) is dismissed as moot.

IT IS SO ORDERED.